# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA STAR MCKENZIE,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:19-CV-0138-DMC<br><br><u>MEMORANDUM OPINION AND ORDER</u> |

    Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (ECF Nos. 7 and 8), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. <u>See</u> 28 U.S.C. § 636(c). Pending before the court are the parties' briefs on the merits (ECF Nos. 15 and 16).

    The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. <u>See</u> <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

1

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1    Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2    If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3    If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

///

2

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

///
///
///
///

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on August 15, 2015. See CAR 15.[1] In the application, plaintiff claims disability began on May 5, 2014. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on October 17, 2017, before Administrative Law Judge (ALJ) Sara A. Gillis. In a February 14, 2018, decision, the ALJ concluded plaintiff was last insured through September 30, 2015, and was not disabled through the date last insured based on the following relevant findings:

1. Through the date last insured, the claimant had the following severe impairment(s): status post L3, L4, and L5 bilateral decompressive hemilaminectomies with a revision procedure cervical degenerative disc disease and right hip osteoarthritis (20 CFR 404.1520(c));

2. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. Through the date last insured, the claimant had the following residual functional capacity: capacity to perform light work as defined in 20 CFR 404.1567b except she was unable to climb ladders ropes or scaffolds she could have occasionally climbed ramps and stairs she could have occasionally stooped knelt crouched and crawled and she requires an option to alternate sitting and standing every 30 minutes while remaining at the workstation;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, through the date last insured plaintiff could have performed her past relevant work as an insurance sales agent.

See id. at 15-26.

After the Appeals Council declined review on November 23, 2018, this appeal followed.

///
///
///

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on May 6, 2019 (ECF No. 10).

## III. DISCUSSION

### A. <u>Plaintiff's Contention</u>

Plaintiff claims to suffer from severe spinal impairments including lumbar spinal stenosis with neurogenic claudication, which required her to undergo 2 surgeries within a 12-month period. See, ECF No. 15, pg. 2. Plaintiff alleges that the ALJ erred in determining whether her spinal impairments met or equaled in severity listing 1.04 and that the case should be remanded to obtain testimony of a vocational expert to resolve the issue. Specifically, plaintiff argues that:

> . . .The ALJ's "analysis" is both insufficient and incorrect because the ALJ failed to adequately consider critical MRI findings which do support compromise of the nerve root or spinal cord.

EFC No. 15, pg. 10.

### B. <u>Defendant's Contention</u>

Defendant argues that the ALJ demonstrated with substantial evidence that plaintiff's impairments do not adequately match a listed impairment under the required Step 3 analysis. According to defendant, plaintiff failed to meet the requirements under Listing 1.04C of the Social Security Regulations. Specifically, defendant claims that: 1) plaintiff did not establish the requisite nerve root compromise to meet Listing 1.04; 2) plaintiff did not establish the requisite claudication to meet Listing 1.04; and 3) numerous treatment notes indicating that plaintiff had a normal gait during the relevant period shows plaintiff could in fact adequately ambulate, counter to the inability-to-ambulate requirement under Listing 1.04. <u>See</u> ECF No. 16, pgs. 7-12.

///
///
///
///
///
///
///

**C.    Disposition**

The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity. See Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe that the presumption of disability cannot be rebutted. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. See Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

Listing 1.04 requires a finding of disability for an individual who has a "[d]isorder[] of the spine" such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture," that results in compromise of a nerve root or the spinal cord, and which is accompanied by the requirements of Section 1.04A, 1.04B, or 1.04C. See 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04; see also Huizar v. Astrue, No. CV 11-7246-PLA, 2012 U.S. Dist. LEXIS 120032, at *16-17 (C.D. Cal. Aug. 23, 2012). Section 1.04C requires "lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively, as defined in 1.00B2b." Id.

1.    Nerve Root Compromise

Plaintiff argues that the results of her MRI and spinal radiograph demonstrated that, at the time of her hearing, her spinal condition included a spinal nerve or cord compromise. Specifically, plaintiff notes that:

> In the body of her decision, the ALJ characterizes plaintiff's June 2, 2014 lumbar MRI as showing "multilevel degenerative disc disease." This MRI demonstrates additional significant findings not discussed by the ALJ, including moderate to severe central spinal stenosis and moderate bilateral neural foraminal narrowing at L4-5, moderate central spinal stenosis and moderate bilateral neural foraminal narrowing at L3-4. [TR 1552] The extent of spinal stenosis is the reason plaintiff underwent decompressive surgery, and plaintiff's spinal stenosis is cited as the cause of her neurogenic claudication. As defined by the National Institute of Health's "U.S. National Library of Medicine," "Spinal stenosis causes

6

> narrowing in your spine. The narrowing puts pressure on your nerves and spinal cord and can cause pain."

ECF No. 15, pg. 10.

Therefore, according to plaintiff, ". . . since spinal stenosis causes spinal nerve or cord compromise, plaintiff's spinal radiographs prior to September 30, 2015 do demonstrate compromise of a nerve root or the spinal cord . . ." Id.

Defendant argues that plaintiff erroneously conflates merely being diagnosed with stenosis with actually experiencing nerve root compromise. Defendant states that:

> . . .Plaintiff's argument ignores the plain text of the Listing, which first requires the existence of a spine disorder. Listing 1.04. It lists spinal stenosis as an example of a spinal disorder covered by the Listing. Then it also requires that the spine disorder cause nerve root compromise. Thus, per the Listing, the mere diagnosis of spinal stenosis does not suffice, as there must be additional evidence of nerve root compromise.
>
> * * *
>
> The MRI evidence did not establish the requisite nerve root compression. Both the June 2014 MRIs revealed evidence of stenosis, but no evidence of nerve root compression or impingement (AR 231, 1551). Although not relied upon by Plaintiff, the March 2015 showed compression of the fat surrounding the nerve root at L3, but no evidence of compression of the nerve root itself (AR 1539). Without nerve root compromise, Plaintiff cannot meet Listing 1.04.

ECF No. 16, pgs. 8-9.

Here, the court finds defendant's arguments persuasive. While the evidence presented at the hearing demonstrates that plaintiff was in fact diagnosed with spinal stenosis, the record is also devoid of any statement which particularly confirms that plaintiff had some form of nerve root compromise. As plaintiff argues in her motion, spinal stenosis and nerve root compromise are closely intertwined with one another. However, they are still independent conditions. Ultimately, a "claimant must establish that he or she meets *each* characteristic of a listed impairment relevant to his or her claim." Tackett, 180 F.3d at 1099 (italic added). Listing 1.04C requires a showing of a nerve root compromise. None was present at the time of the ALJ's determination. Therefore, defendant is correct in that the ALJ properly concluded that plaintiff failed to show she suffered from all required conditions.

7

2. <u>Requisite Claudication</u>

Defendant concedes that plaintiff was diagnosed with lumbar stenosis with neurogenic claudication. However, defendant argues that plaintiff did not experience the requisite claudication for a continuous 12-month period as required under the Social Security Act. Specifically:

> . . .Although Plaintiff was diagnosed with lumbar stenosis with neurogenic claudication in August 2014, a month later she was diagnosed with lumbar stenosis without neurogenic claudication (AR 231, 236). In fact, the record contains numerous references to Plaintiff having lumbar stenosis without neurogenic claudication [internal citations omitted]. The fact that there is intermittent evidence that Plaintiff experienced neurogenic claudication does not establish that she met the Listing because the record clearly established that she was assessed with stenosis without claudication on numerous occasions. *See Mattison ex rel. K.A. v. Astrue*, 520 F. App'x 531, 533 (9th Cir. 2013) (unpublished) (fact that Plaintiff had testing in the record that both satisfied and didn't satisfy the listing, "did not show a disabling impairment that persisted for a continuous period of at least 12 months"); *Kallenbach v. Berryhill*, 766 F. App'x 518, 520 (9th Cir. 2019) (unpublished) (a few instances of abnormal findings did not establish that the claimant experienced symptoms for the continuous period of 12 months to meet Listing 1.04) ; *Cattano v. Berryhill*, 686 F. App'x 408, 410 (9th Cir. 2017) (unpublished) (same).

ECF No. 16, pgs. 9-10.

Plaintiff argues that any diminishment in the claudication was short-lived and that she continually satisfied all the listing requirements under 1.04C for the requisite 12-month period. Specifically, plaintiff states:

> The evidence appears to support that listing 1.04C is met or equaled in plaintiff's case. This listing requires "Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." As noted, MRI findings establish lumbar spinal stenosis, and surgeon Dr. Smith diagnosed neurogenic claudication (i.e., pseudoclaudication) both before and after both of plaintiff's spinal surgeries. While records show plaintiff's first surgery resulted in short lived resolution of radicular symptoms plaintiff testified that she required use of a walker for ambulation between her 2 spinal surgeries (demonstrating inability to ambulate effectively). [TR 37]

ECF No. 15, pg. 11.

///
///

8

Here, the court also finds defendant's arguments convincing. It is apparent from the record that plaintiff's lumbar stenosis was accompanied by neurogenic claudication on an inconsistent basis. There are multiple documents in the Certified Administrate Record which show plaintiff suffered from spinal stenosis without the requisite accompanying claudication throughout the 12-month period. See CAR 236 (9/11/2014) (diagnosis of spinal stenosis, lumbar region, without neurogenic claudication), 606 (9/18/14) (noting stenosis without claudication), 1394 (9/24/15) (Status post lumbar laminectomy, spinal stenosis without neurogenic claudication).

Plaintiff notes that, despite any alleged improvement in her condition, she continued to suffer from ambulatory diminishment throughout the 12-month period and required the use of a walker to move around. While the ALJ may properly take note of an applicant's testimony of her physical condition, the ALJ is similarly free to consider all other relevant evidence in the record to make a determination. See Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.") (citations omitted). The decision to deny benefits will be overturned only if it is not supported by substantial evidence or it is based on legal error. Gonzalez v. Sullivan, 914 F.2d 1197, 1200 (9th Cir. 1990). Here, the record provides sufficient evidence of instances of absence of claudication throughout the relevant 12-month period such that the ALJ's denial of plaintiff's application cannot reasonably be seen as either arbitrary or devoid of substantial evidence. Therefore, in this respect, the ALJ properly found that plaintiff failed to satisfy all listing requirements under 1.04C.

### 3. Ability to Ambulate During the Relevant Period

Here, defendant argues that plaintiff did not establish that she could not effectively ambulate for the 12-month duration required to meet Listing 1.04C. Defendant states that:

> . . .The record contains numerous references to Plaintiff having a normal gait during and immediately after the relevant period (AR 1460 (5/29/14 – normal gait), 1455 (6/18/14 – normal tandem gait), 231 (8/7/14 – well-balanced heel-toe gait, did not use an assistive device, denied needing an assistive device), 598 (9/9/14 – normal gait without assistive

device), 1427 (12/15/14 – normal gait), 1418 (5/23/15 – same), 1401 (8/13/15 – same), 1384 (11/16/15 – antalgic gait but no assistive device), 1579 (1/13/16- normal gait and station).

\* \* \*

. . .The only evidence of Plaintiff needing a two-handed assistive device was after her July 2015 surgery when she was provided a walker as a "stand by" (AR 1086). Six weeks after her surgery, however, Plaintiff stated that she was "pleased" with her progress after surgery, and exhibited a nonantalgic gait (AR 1401). This, at most, six-week period during which Plaintiff needed a walker as a "stand by" does not establish that she had the requisite inability to effectively ambulate required to meet Listing 1.04C. *See Connors v. Colvin*, 656 F. App'x 808, 810 (9th Cir. 2016) (unpublished) (claimant did not establish an inability to effectively ambulate pursuant to 1.00B.2.b because a walker was prescribed for only "periodic use" and the claimant only needed it "at times" ).

ECF No. 16, pgs. 10-11

Plaintiff acknowledges there was an initial abatement of her back-related symptoms following her initial surgery. However, plaintiff contends that, despite this temporary recovery, she continued to suffer as a result of her back-related pain. Plaintiff states:

> Although the ALJ indicates that plaintiff's improvement in leg pain after the first surgery supports that she was not disabled after the first surgery [see TR 22-23], this improvement was very short-lived, indicating that the first surgery was ultimately a failure. [] There was not a second injury, rather plaintiff's lumbar stenosis recurred and a second surgery was required. Further, plaintiff's low back pain never resolved, just the leg pain for a short period. The initial surgery occurred September 18, 2014 and plaintiff appeared to be undergoing a normal recovery initially. Two months later, on November 15, 2014 while in appropriate rehabilitation physical therapy, plaintiff still had residual moderate level constant lower back pain with intermittent unilateral transient radicular symptoms into the bilateral lower extremities. [TR 1431] In December 2014, plaintiff reported that she still had sciatic symptoms. [TR 1427] On February 12, 2015, plaintiff reported that she had "insidious but constant" return of sciatica symptoms going down the posterior legs. [TR 1419] This description indicates a gradual return of the radicular leg symptoms after their initial resolution. This being the case, plaintiff never received full recovery from the first surgery. [. . .] 20 CFR 404, Subpart P, Appendix 1 sec 1.00D recognizes "Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation." The preceding section indicates that a short lived partial recovery is not inconsistent with continuing disability.

ECF No. 15, pgs. 11-12

///

///

Here, the court again concurs with defendants. Listing 1.04C requires, among other things, a showing of "lumbar spinal stenosis resulting in . . . an inability to ambulate effectively. . ." <u>Huizar v. Astrue</u>, No. CV 11-7246-PLA, 2012 U.S. Dist. LEXIS 120032, at *17-18 (C.D. Cal. Aug. 23, 2012). Examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker. <u>See</u> <u>Moran v. Astrue</u>, No. CV 10-4949 JCG, 2011 U.S. Dist. LEXIS 125638, at *10 (C.D. Cal. Oct. 28, 2011). While plaintiff demonstrates that, at certain points during the 12-month period, she required a walker or cane to ambulate, defendant can similarly point to several medical reports and testimony which suggest that plaintiff could ambulate effectively. <u>See</u> ECF No. 16, pg. 11 (multiple dates, pre and post-surgery, demonstrating that plaintiff had either normal gait or did not utilize a walker). Where, as here, the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, <u>see</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002). At multiple times in the 12-month period, plaintiff was capable of ambulating without the need of an assistive mobility device. From this record, the ALJ reasonably concluded that plaintiff did not meet the ambulatory requisites under Listing 1.04C.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is denied;
2. Defendant's motion for summary judgment (ECF No. 16) is granted;
3. The Commissioner's final decision is affirmed; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  February 25, 2020

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE